# 13-1950

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

DEBRA KRAMER AS TRUSTEE OF THE ESTATE OF
SHAHARA KHAN,

Plaintiff-Appellee,

v.

TOZAMMEL H. MAHIA,

Defendant-Appellant

On Appeal from the United States District Court for the
Eastern District of New York

## BRIEF FOR DEFENDANT-APPELLANT

Karamvir Dahiya, Esq.
75 Maiden Lane, Suite 506
New York, New York 10038
Tel: (212)766-8000

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES…………………………………………………...1

STATEMENT OF THE CASE………………………………………………….2

STATEMENT OF FACTS……………………………………………….......3

STATEMENT OF JURISDICTION……………………………………………….5

STANDARD OF REVIEW………………………………………………….6

SUMMARY OF ARGUMENT…………………………………………………7

ARGUMENT………………………………………………………...10

    Bankruptcy Judges/Courts are not within Article III
    historical exceptions…………………………………………………13

    Bankruptcy Judges/Courts are not Adjuncts to District Court……………14

    The District Court didn't need any special expertise………………….......16

    Core Judicial function cannot be delegated…………………………..…18

    The district court cannot ignore judicial precedent………………..……..19

    Non-constitutional, functional reasons cannot override
    constitutional mandate. ……………………………………………….21

    Article III judicial power transfer under section 157could not
    be justified under either under consent or balancing test………………….22

    Congress, with section 157, did not establish procedure for
    Article III court, rather it withdrew jurisdiction from them……………….23

    District Court is the only adjudicating Court and not the
    Bankruptcy court.Private Rights requires Article III adjudication…………25

    National laws requires Article III adjudication…………………………26

i

Bankruptcy Judge usurps Article III powers…………………………………27

Separation of Power entailed………………………………………………..28

BAFJA………………………………………………………………………...29

Violation of the Appointment Clause………………...………………33

Jury trial was not lost……………………………………………………....39

CONCLUSION………………………………………………………..…42

# TABLE OF AUTHORITIES

## CASES

*Bowsher v. Synar,*

  478 U.S. 714 (1986)……………………………………………..21, 23, 35

*Buckley v. Valeo,*

  424 U.S. 1 (1976)……………………………………………...passim

*Butner v. United States,*

  440 U.S. 48 (1979)…………………………………………………..1

*Cohen v. Beneficial Indus. Loan Corp.,*

  337 U.S. 541 (1949)………………………………………..…….6

*Commd'y Futures Trading Comm'n v. Schor,*

  478 U.S. 833 (1986)………………………………………...….8

*Crowell* v. *Benson ,*

  285 U. S. 22 (1932)…………………………………….....14, 15, 26

*Dimick v. Schiedt,*

  293 U.S. 474 (1935)…………………………………….….39

*Edmond v. United States,*

  520 U.S. 651 (1997)………………………………….....…..38

*Fed. Sav. and Loan Ins. Corp. v. Ticktin,*

  490 U.S. 82, 85-88 (1989)…………………………………....24

*Freytag v. Commn'r,*

  501 U.S. 868 (1991)……………………………………….36

*Glidden Co. v. Zdanok,*

    370 U.S. 530 (1962)………………………………………………….....6, 9

*Granfinanciera, S.A. v. Nordberg,*

    492 U.S. 33 (1989)……………………………………………….passim

*Hanna v. Plumer,*

    380 U.S. 460 (1965)……………………………………………………..23

*Hilton v. South Carolina Public Railways Comm'n,*

    502 U.S. 197, 202 (1991)……………………………………….…19

*INS v. Chadha,*

    462 U.S. 919 (1983)…………………………………………..21, 22, 31

*In re Charter Commc'ns Inc.,*

    691 F.3d 476 (2d Cir. 2012)…………………………………………6

*In re Metromedia Fiber Network, Inc.,*

    416 F.3d 136 (2d Cir. 2005)………………………………….…6

*In re Texas Gen. Petroleum Corp.,*

    52 F.3d 1330 (5th Cir. 19985)……………………………….…40

*J.W. Hampton, Jr. & Co. v. United States,*

    276 U.S. 394 (1928)………………………………………………..32

*Martin v. Hunter's Lessee,*

    14 U.S. 304 (1816)……………………………………………………..8

*McCarthy v. Bronson,*

    906 F.2d 835 (2d Cir. 1990)…………………………………….…40

*Melkonyan v. Sullivan*,

      501 U.S. 89 (1991)……………………………………………24

*Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noices, Inc.*,

      501 U.S. 252 (1991)…………………………………………..32

*Mistretta v. United States*,

      488 U.S. 361 (1989)…………………………………………...32

*Morrison v. Olson*,

      487 U.S. 654 (1988)…………………………………………...37

*Murray's Lessee v. Hoboken Land & Improvement*,

      59 U.S. 272 (1855)…………………………………………...28

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,

      458 U.S. 50 (1982)…………………………………………passim

*Palmore v. United States*,

      411 U.S. 389 (1973)…………………………………………...27

*Parklane Hosiery Co., Inc. v. Shore*,

      439 U.S. 322 (1979)…………………………………………...40

*Patterson v. McLean Credit Union*,

      491 U.S. 164 (1989)…………………………………………...20

*Payne v. Tennessee*,

      501 U.S. 808 (1991)…………………………………………...20

*Pereira v. Farace*,

      413 F.3d 330 (2d Cir. 2005)…………………………………...40

*Pretez v. United States*,

  501 U.S. 923 (1991)……………………………………………………..22

*Plaut v. Spendthrift Farm, Inc.*,

  514 U.S. 211 (1995)…………………………………………….......21

*Pretez v. United States*,

  501 U.S. 923 (1991)……………………………………………………..22

*Printz v. United States*,

  521 U.S. 898 (1997)…………………………………………………….35

*Public Citizen v. United States Dep't of Justice*,

  491U.S. 440 (1989)…………………………………………………....21

*Rosen v. Dick*,

  639 F.2d 82 (2d Cir. 1980)……………………………………………….41

*Ryder v. United States*,

  515 U.S. 177 (1995)…………………………………………………….36

*Securities Investor Protection Corp. v. Madoff*,

  490 B.R. 46 (2013)……………………………………………….18

*Schoenthal v. Irving Trust Co.*,

  287 U.S. 92 (1932)……………………………………………….....25

*Smith v. Allwright*,

  321 U.S. 649 (1944)…………………………………………………….20

*Stellagen v. Clum*,

  245 U.S. 605 (1918)…………………………………………………….27

*Stern v. Marshall,*

     131 S.Ct. 2594 (2011)……………………………………………passim

*Thomas v. Union Carbide Agric. Prods.Co.,*

     473 U.S. 568 (1985)……………………………………….…..8, 16

*United States v. Hotaling,*

     634 F.3d 725 (2d Cir. 2011)…………………………………..……..6

*United States v. Pettus,*

     303 F.3d 480 (2d Cir. 2002)…………………………………..……..6

*United States v. Raddatz,*

     447 U.S. 667 (1980)………………………………….…...12, 33

*United States v. Will,*

     449 U.S. 200 (1980)…………………………………...……..9

*Youngstown Sheet & Tube Co. v. Sawyer,*

     343 U.S. 579 (1952)……………………………………………31

## **STATUTES**

11 U.S.C. § 584……………………………………………...25

28 U.S.C. § 151…..11, 34

28 U.S.C. § 157………………………………………..…………..passim

28 U.S.C. § 1334………………………………………...…...5, 10, 11, 37

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The Defendant-Appellant requests this Honorable Court oral arguments in this case.

## STATEMENT OF ISSUES

1.  Whether Congress can assign state law causes of action to non-Article III court.

2.  Whether bankruptcy courts – presided over by bankruptcy judges – may decide state law causes of action or private causes of action, including "proposed findings of facts" and "conclusions of law".

3.  Whether bankruptcy judges are adjuncts to the district court.

4.  Whether the Appellant has a right to be heard by an Article III court.

5.  Whether Appellant – who has not consented to non-Article III court jurisdiction – can be compelled to the jurisdiction of a non-Article III court.

6.  Whether 28 U.S.C. § 157(a), dated August 28, 1986, and qualified by the Order dated December 05, 2012, signed by Chief Judge Honorable Carol Bagley Amon, (the "Referral Order"), which allows for the default referral of all bankruptcy matters to the Article I courts, violates Article III and Mahia's right to be heard by an Article III judge when Mahia requested a hearing in an Article III court.

7.  Whether the Referral Order violates the Separation of Power doctrine and violates the appointment clause in Article III, Section 2, Clause 2 of the United States Constitution when bankruptcy judges are appointed, pursuant to 28 U.S.C. § 152.

1

8.  Whether Mahia is entitled to have a ruling on his Appointment Clause challenge prior to the bankruptcy judge adjudicating his case when Mahia timely filed the challenge?

9.  Whether the *Northern Pipeline* decision rendered unprecedential by Congress Amendment to the Bankruptcy Act of 1978?

10. Whether the withdrawal of the reference was improperly denied in violation of Mahia's Due Process rights.

## STATEMENT OF THE CASE

Defendant-Appellant, Tozammel Mahia ("Mahia") filed a motion to withdraw the reference pursuant to a right to be heard by an Article III court as well as under the permissive and compulsory withdrawal of reference provisions found under 28 U.S.C. § 157(d). Mahia disputed Congress' authority to assign state-based causes of action to the bankruptcy courts citing the parameters of Article III and also challenged the appointment of the bankruptcy judges under the Appointment Clause.

On April 15, 2013, District Court Judge, Hon. Judge Dora Lizette Irizarry, denied the motion to withdraw the reference. The decision is reported as 2013 U.S. Dist. LEXIS 55728.

## STATEMENT OF FACTS

On July 22, 2010, Mahia's mother, Debtor, Shahara Khan, filed a voluntary petition for relief from her creditors pursuant to chapter 7 of the Bankruptcy Code. A19.  On December 3, 2011, the Trustee, Debra Kramer, initiated an adversary proceeding against the Debtor's son, Mahia by filing a complaint with the United States Bankruptcy Court, Eastern District of New York. A17-A25. The complaint, based on New York State, laws sought to recover alleged fraudulent conveyances from Mahia as a result of a sale of real property known as 87-27 110th Street ("House"), Richmond Hill, New York 11418.  A17-A25.

On February 7, 2012, Mahia filed an objection to the jurisdiction of the bankruptcy court and filed an answer with counter claims of abuse of process and constitutional tort, however these two counterclaims were eventually withdrawn. A26-A32. In the Answer, Mahia contended that Ms. Khan, the Debtor herein, was bare legal title holder of the property which had been sold. A28-29. Further, Ms. Khan has been dependent on his for several years and that he has spent more money on her than what the Trustee Kramer is claiming from him. A28-A29. Further, Mahia contended that the Debtor did not put down any down payment for the purchase for the house, did not make a single mortgage payment and never paid

any bills.  A28-A29.  Mahia demanded an Article III jury trial and invoked the right to be heard by an article III court. Mahia did not consent to the jurisdiction of the bankruptcy court.  A26.

Kramer later amended this complaint to bring in additional claims based upon New York Fraudulent Conveyance laws.  A37-A52.  Mahia filed an Answer with affirmative defenses and once again demanded jury trial and a right to be heard by an Article III.  A53-A63.  Mahia also objected to the jurisdiction of the bankruptcy court based on current Supreme Court rulings. A53.

Kramer, twice requested extension of time (on 2/23/2012 & 03/21/2012) to respond to the counterclaim and entered into stipulation for the same and "So Ordered" by the bankruptcy judge. A33-A36.  In these stipulations, Kramer clearly acknowledged the receipt for the demand for a jury trial.  A33-A36.

Thereafter, on April 23, 2012, Christine T Castiglia-Rubinstein filed a notice of appearance on behalf of Mahia and withdrew the counterclaims. A64.  On 06/13/2012, 07/16/2012, 09/13/12, and 11/20/2012 the Court held pretrial conference and continued to adjourn the case.  A65-A102.  During such time, Mahia was being represented by Ms. Castigalia-Rubinstein. A65-A102.  On December 5, 2012, Karamvir Dahiya, Mahia's current counsel, entered a notice of appearance on behalf of Mahia.  A103-A105.  Immediately thereafter, Mahia filed

an emergency motion for the withdrawal of Reference of the underlying adversary complaint. A106-A124.

On March 11, 2013, counsel for Mahia moved for recusal of the bankruptcy judge, alleging bias. A125-A133. On January 4, 2013, Kramer filed response to Motion of withdrawal of reference regarding the sanctions motion. A134-A146. On May 15, 2013, the bankruptcy court directed that the Mahia may make a motion to reopen the discovery period to seek discovery related to any new factual allegations and causes of action set forth in the amended complaint, to be served and filed to be received by May 31, 2013. A94-A95. However this motion for discovery was denied. A99-A100. On May 21, 2013, District Court denied Mahia's Motion to Withdraw the Reference. A4.

## STATEMENT OF JURISDICTION

Mahia sought to invoke the district court's jurisdiction under 28 U.S.C. § 157(d) under both permissive and compulsory withdrawal of the reference to the bankruptcy court. The district courts have original but not exclusive jurisdiction over all civil proceedings arising under the Code, or arising in or related to a bankruptcy case. 28 U.S.C. § 1334(b). Section 157 of Title 28 allows district courts to refer cases to the bankruptcy court in the district court's jurisdiction and also allows the district court to withdraw such a reference.

5

Normally, an order denying a motion to withdraw a reference under § 157(d) is not a final appealable order. However the underlying order transcends, "merely address[ing] where that issue will initially be decided" and it has conclusively decided substantive issues, including denial of right to an Article III court and a jury trial. See, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) (allowing non-statutory appeals of non-final orders where a right "would be destroyed if it were not vindicated before."). Further, Mahia has an independent *right* to adjudication in a constitutionally *proper* forum, *Glidden Co. v. Zdanok*, 370 U.S. 530, 533, 671 (1962), and alleges he is being forced into a constitutionally infirm tribunal.

## STANDARD OF REVIEW

On appeal, this Court "ordinarily review[s] the district court's decision de novo." *In re Charter Commc'ns Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012) (quoting *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 139 (2d Cir. 2005)). Further, this Court reviews "the district court's ruling on the constitutionality of a statute *de novo*." *United States v. Hotaling*, 634 F.3d 725, 728 (2d Cir. 2011) (citing *United States v. Pettus*, 303 F.3d 480, 483 (2d Cir. 2002)).

## SUMMARY OF ARGUMENT

The district court improperly denied both the withdrawal of reference and jury trial requests. The district court order denying the withdrawal of the reference must be reversed because bankruptcy judges lack constitutional authority to adjudicate state-based causes of action.  It is unconstitutional for the district court to refer, wholesale, the adjudication of all fraudulent conveyance actions or constitutional issues to the bankruptcy court as it does through 28 U.S.C. § 157.

First, the provision that allows the district court to transfer "any or all cases" does not fall within one of the categories identified by the *Northern Pipeline* plurality –territorial courts, military tribunals, and public rights exceptions. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). Second, bankruptcy judges do not fall within *N. Pipeline*'s "adjuncts" theory: bankruptcy judges are not adjuncts to the district courts. Unlike magistrate judges that sit in the district court and are supervised by district courts, bankruptcy judges do not sit in the district court and are not so supervised.  *See*, *Stern v. Marshall*, 131 S.Ct. 2594, 2611 (2011) (stating that bankruptcy courts cannot "be dismissed as mere adjuncts of Article III any more than could the bankruptcy courts under the 1978 Act.  The judicial powers the courts exercise in cases such as this remain the same, and a court exercising such broad powers is no mere adjunct of anyone.").

7

Third, 28 U.S.C. § 157 cannot be justified under the balancing test used by the Supreme Court: Mahia has not consented to the bankruptcy court's jurisdiction. *Commd'y Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986). Fourth, the district court is bound by *stare decisis* and could not have denied Mahia the right to be heard by an Article III court. Fifth, the Supreme Court recognizes, as an exception, that bankruptcy courts may adjudicate issues related to public rights; however, the causes of action in the adversary complaint and the previously asserted counterclaims do not relate to an integrated regulatory scheme and are not covered by the public rights doctrine. *Thomas v. Union Carbide Agric. Prods.Co.*, 473 U.S. 568, 589-90, 593-94 (1985)("Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution").

Sixth, Article III does not allow Congress to delegate inherently judicial matters, and specifically matters of private rights, away from Article III courts. Article III limits the extent of permissible congressional jurisdictional regulation through the separation of powers. *Martin v. Hunter's Lessee*, 14 U.S. 304, 330 (1816) (finding that the language of Article III is mandatory and that Congress is required to vest "the whole judicial power" in the federal courts).

8

Seventh, when a defendant invokes the Seventh Amendment right to a jury trial or the right to be heard by an Article III tribunal, the case is not subject to transfer to a non-Article III court.  Article III and the Seventh Amendment are co-extensive. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). Eight, a party, having invoked the right to be heard by an independent judge under Article III, cannot be subjected to the bankruptcy judge, as that would violate Due Process. The role of the independent judiciary within the constitutional scheme of tripartite government is to assure impartial adjudication in federal court. *United States v. Will*, 449 U.S. 200, 217-18 (1980); *Buckley v. Valeo*, 424 U.S. 1, 122 (1976) (per curiam).

Ninth, adjudicating liability of one individual to another being innate to private rights cannot be assigned to non-Article III judge in a federal proceeding context. See *Marathon, Schor, Granfinanciera and Stern.*

Tenth, a litigant is entitled to adjudication in a constitutionally proper forum. The method of appointment of bankruptcy judges – vested with judicial powers pursuant to Section 157 – violates the Appointment Clause of the United States Constitution. *Glidden Co. v. Zdanok,* 370 U. S. 530, 370 U. S. 533 (1962). Eleventh, the constitutional structural protections are also implicated where, as here, a defendant cannot withdraw a referral to a non-Article III tribunal: the

Bankruptcy Code allows only discretionary withdrawal and limits mandatory withdrawal to certain circumstances. *See generally* 28 U.S.C. § 157.

Twelfth, the jury right was improperly denied. The request for a jury trial was submitted within the time requirements delineated under Rule 38. The Plaintiff duly acknowledged the request. Thirteenth, the district judge could not have delegated core judicial functions to a bankruptcy judge. Fourteenth, the district court procedurally erred when it ruled on the merits of the right to jury trial without first withdrawing the reference.

## ARGUMENT

On June 28, 1982, the Supreme Court found The Bankruptcy Reform Act of 1978 (Pub. L. 95–598, 92 Stat. 2549, November 6, 1978 hereinafter referred to as the "Bankruptcy Act") unconstitutional. *N. Pipeline*, 458 U. S. at 88. In *Northern Pipeline*, the Supreme Court held that Congress, in enacting § 1471 of the Bankruptcy Act, had impermissibly removed the essential attributes of an Article III court and had vested them in a non-Article III adjunct. *Id.* Thus, the Supreme Court declared the broad grant of jurisdiction in § 1471 unconstitutional. *Id.* Shortly after the *Northern Pipeline* decision, Congress amended the jurisdictional statute to comply with the Supreme Court's edict. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (the "1984 Act" or "BAFJA").

10

The jurisdictional grant under BAFJA is codified in 28 U.S.C. § 1334(a) and (b). The language used in these subsections is nearly identical to the language employed in Bankruptcy Act, 28 U.S.C.§ 1471(a) and (b). BAFJA returned the power to adjudicate bankruptcy issues to the district courts. Therefore, while BAFJA remained similar to Sections 1471(a) and (b) of the Bankruptcy Act of 1978, it omitted Section 1471(c) which had, prior to BAFTA, conferred upon the bankruptcy court to power to exercise jurisdiction over all bankruptcy issues.

Therefore, with BAFJA, Congress merely provides that the district courts may refer bankruptcy cases to the bankruptcy courts. Each district court may refer all, some, or no cases and proceedings or parts thereof to the bankruptcy judges of the district. The authority to refer cases and proceedings under section 157(a) has been exercised by local rule or order in all federal judicial districts. The Eastern District of New York has utilized this provision; and, in pursuance thereof, it has made an un-individuated blanket referral of all Title 11 issues.

The result of this blanket referral is that cases and proceedings are filed in a distinct separate court, the United States Bankruptcy Court, which is presided over by a chief bankruptcy judge and other additional bankruptcy judges. BAFJA did not create the bankruptcy court as an entity, only as a court of record, and the Bankruptcy Act refers to an aggregation of bankruptcy judges as forming a court. See generally, 28 U.S.C. 151 ("In each judicial district, the bankruptcy judges in

regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.").

Section 157(a), as added in 1984 by BAFJA is a reproduction of section 1471(c), which was added in 1978 by Bankruptcy Act and held invalid in 1982. In invalidating section 1471(c), Congress delegated jurisdiction to a non-Article III court. In section 157(a), both Congress and the district courts delegated jurisdiction to a non-Article III court. However, even if the referral comes from another branch such as the Judiciary, it does not change the Supreme Court's reasoning in *Northern Pipeline*.

Further, an attempt to characterize the pool of bankruptcy judges as adjunct, auxiliary, judicial officers assisting the district court in its judicial business like judges in the magistrate does not pass constitutional muster, for the duties and powers of bankruptcy judges are far different than a magistrate judge's duties and powers. A bankruptcy judge, under the Bankruptcy Code, is functionally and substantively performing distinct legal tasks on an independent basis unlike a magistrate judge who is under direct control and close supervision of the district court. *Compare N. Pipeline*, 48 U.S. 50 with *United States v. Raddatz*, 447 U.S. 667 (1980).

The reference of judicial bankruptcy matters related to state law to the bankruptcy judges is not constitutionally permissible as they are not adjuncts to the

district courts and further their appointment is fallible under the Appointments

Clause. Mahia's right to be judged in accordance with a constitutionally valid rule

of law is unquestionable. Also, Mahia has continuously insisted on the right to an

Article III court, hence, subjecting him to the bankruptcy court jurisdiction is a

denial of due process.

**Bankruptcy Judges/Courts are not within Article III historical exceptions**

Allowing bankruptcy judges, through bankruptcy courts, to adjudicate the

underlying dispute in this instance does not comport with Article III or with Article

III's historical exceptions. Article III is a structural limit on Congress' authority to

assign cases to non-Article III courts. Congress cannot assign private rights issues

to such a non-Article III tribunal. The Supreme Court recognizes only three narrow

categories of "exceptional" grants of power to the executive and legislative

branches as exceptions to Article III: the non-Article III courts of the territories and

the District of Columbia; the establishment of courts-martial; and the creation of

legislative courts and administrative agencies that adjudicate matters of "public"

rather than "private" rights. *N. Pipeline*, 458 U.S. at 64-70 (1982) (arguing that so

called "private rights" cases could not be removed from Article III courts and

delegated to legislative courts or administrative agencies, even if judicial review in

an Article III court were provided thereafter). *See also, Stern*, 131 S.Ct. 2594,

2611 (J. Scalia, concurring):

Leaving aside certain adjudications by federal administrative agencies, which are governed (for better or worse) by our landmark decision in *Crowell* v. *Benson* , 285 U. S. 22 (1932) , in my view an Article III judge is required in *all* federal adjudications, unless there is a firmly established historical practice to the contrary. For that reason—and not because of some intuitive balancing of benefits and harms—I agree that Article III judges are not required in the context of territorial courts, courts-martial, or true "public rights" cases. See *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.* , 458 U. S. 50, 71 (1982) (plurality opinion).

## Bankruptcy Judges/Courts are not Adjuncts to District Court

The district court order overlooks the fact that the bankruptcy judges are not adjuncts to the district and thus they cannot indulge in "finding of facts" and proposing "conclusions of law." A bankruptcy judge cannot suggest conclusions of law to the district court with respect to any rights not created by Congress. *See N. Pipeline*, 458 U.S. at 79. The Court in Northern Pipeline admitted that Congress possessed broad discretion to assign fact-finding functions to an adjunct of the district court to aid in adjudicating congressionally-created statutory rights, however, *not* regarding rights not created by Congress. *Id.* In nullifying the Bankruptcy Act of 1978, the Court was explicit that because the Bankruptcy Reform Act of 1978 did not retain the essential attributes of judicial power in an Article III court, but instead vested such judicial power in the an adjunct to the district court, it was unconstitutional. *Id.* at 87.

Adjuncts are permissible only if "essential attributes of the judicial power" are retained by an Article III court. *Crowell v. Benson*, 285 U.S. at 51, 52.

14

However, here, the bankruptcy judge's power to adjudicate the underlying controversy, including deciding dispositive motions without the entry of a final decision is indeed a transgression of that permission. At current, bankruptcy judges have returned to yielding the same power held unconstitutional in *Northern Pipeline*. The only difference is that now bankruptcy judges are appointed by the judiciary itself; however, that does not resolve the issue.

The powers not allowed to the Congress are equally not allowed to the judiciary; the shield and protection provided by the separation of powers is applied universally. The Supreme Court has recognized "factfinding by an administrative agency, . . . as an adjunct to the Art. III court, [is] analogizing the agency to a jury or a special master and permitting it in admiralty cases to perform the function of the special master *Crowell*, 285 U.S. 22, 51-65 (1932). However, "*Crowell* involved the adjudication of congressionally created rights." *Id.*

Further, the functions of the bankruptcy judge as an adjunct are not limited "in such a way that 'the essential attributes' of judicial power are retained in the Art. III court." *Id.* Nonetheless, "the bankruptcy court is not an 'adjunct' of either the district court or the court of appeals." *Id.* at 91 (Rehnquist, J., concurring in the judgment); *Stern*, 131 S. Ct. at 2611 ("Nor can the bankruptcy courts under the 1984 Act be dismissed as mere adjuncts of Article III courts . . . .").

15

Here, the bankruptcy court declared itself as an independent court, endowed with inherent judicial powers. However, it is contrary to Supreme Court precedent to allow the bankruptcy court to be vested with inherent judicial powers. The bankruptcy court cannot be the ultimate authority to render a decision; the district court must have control over the entire case to have the constitutional grant to accept or deny the bankruptcy judge's findings as legally valid.

When the Supreme Court decided that the grant of powers to the bankruptcy judge was unconstitutional in *Northern Pipeline*, it not only denied the bankruptcy judges of the power to enter final decision, it also barred them from adjudicating the proceeding including those of conducting a trial. The power to supervise pre-trial discovery, make ruling on dispositive motion, making finding of facts and conclusion of law are integral parts of adjudication barred by Northern Pipeline. The Court has subsequently recognized this holding: Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review. *Thomas v. Union Carbide*, 473 U.S. at 584.

## The District Court didn't need any special expertise

The district court does not have to rely on the particular expertise of a bankruptcy judge. Bankruptcy Courts are not expert agencies; instead, they use

federal rules for procedure and state laws for property rights. *Butner v. United States*, 440 U.S. 48 (1979). There are reorganization proceedings (such as confirmation of plans) where bankruptcy units have knowledge; however, that is not at issue in this fraudulent conveyance action.

The underlying dispute in this case does not necessitate any particularized or special expertise. It is a typical private right issue: liability of one individual to the other.  This fraudulent conveyance dispute could not have been referred to the bankruptcy court for a reason that it desiderated special expertise. Efficiency and expertise were part of the reason for creating non-Article III tribunals. However, the Supreme Court has allowed assertion of judicial authority by non-Article III tribunals where the agency had to have special or "obvious expertise" in a "particularized area of law.  Further, assertion of judicial authority has been allowed only when the area of law was governed by a "specific and limited federal regulatory scheme." *Schor*, 478 U. S. at 836.

However, bankruptcy courts have jurisdiction over all civil matters. Upon referral of a matter, bankruptcy judges function just like Article III judges.  As such, the assignment of work to non-Article III officials cannot be justified on grounds that it requires specialized expertise or combination of adjudicatory and rule making functions from those followed in Article III courts. The underlying controversy in this case is premised in New York State fraudulent conveyance

17

laws. It is the Article III court that is more suitable for its disposition. *See, e.g.,* *Stern*, 131 S. Ct. 2594, 2611 ("The 'experts' in the federal system at resolving common law counterclaims such as [Appellant's] are the Article III courts, and it is with those courts that her claim must stay."). There is no requirement of substantial expertise of bankruptcy law needed here.

**Core Judicial function cannot be delegated.**

Auxiliary judicial officers are increasingly relied on for assistance in judicial work. Yet, the extent to which judicial business may be delegated to this non-Article III auxiliary officer is dependent on the Constitution. The Constitution does not define legislative or judicial powers. An entry of a final decision by a district court does not resolve a constitutional issue. Control over the final decision or issue of law is not the only or the core purpose of Article III. Adjudication by an impartial decision maker is one of the essential judicial functions. The tenure and salary protections of Article III is precisely what the Framers of the Constitution had in mind for the ensuring an impartial decision maker. Control over fact finding is as important or perhaps more important a judicial function then mere application of law to the facts.

The district court's reliance on *Securities Investor Protection Corp. v. Madoff*, 490 B.R. 46 (2013) for the proposition that the bankruptcy judge should continue with the finding of facts and conclusion of law is inapposite. It does not

meet the constitutional requirement as posited by Supreme Court in its decision.
As stated by *Northern Pipeline*, "[o]ur precedents make it clear that the
constitutional requirements for the exercise of the judicial power must be met at all
stages of adjudication." *Id.* at 59.

Finding of facts and conclusions of law are integral parts of adjudication.
Here, Mahia was not asking the district court to recreate or invent something that
the Congress would have done, had it known that it could not empower the
Bankruptcy Court to finally decide such actions. Here the issue is not about
Congressional intent, but it is the reading of the Article III which derives its power
not from the Congress but from the Constitution. There is binding precedent
regarding interpretation of Article III as a structural limit on the Congress and its
violation if the Congress assigns fraudulent conveyance, private rights disputes to
non-Article III court.

**The district court cannot ignore judicial precedent.**

Here with the binding decision of the Supreme Court in *Northern Pipeline*,
the district court should not have speculated further in differing cases laws or
probing the intention of the Congress, for this case did not have any thing very
different than what was decided in Supreme Court. *Hilton v. South Carolina
Public Railways Comm'n*, 502 U.S. 197, 202 (1991) (finding that the court
"[would] not depart from the doctrine of *stare decisis* without some compelling

justification."). *Northern Pipeline* was a constitutional adjudication putting to rest

the "jurisdictional ping-pong;" thus, its decision must not be dismissed as a trivia

for such a decision is not in "the same class as a restricted railroad ticket, good for

this day and train only." *Smith v. Allwright*, 321 U.S. 649, 669 (1944) (Roberts J.

dissenting). Rather, "*stare decisis* is the preferred course because it promotes the

evenhanded, predictable, and consistent development of legal principles, foster

reliance on judicial decisions,  and contributes to the actual and perceived integrity

of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). *See also*

*Hilton*, ("Time and time again, this Court has recognized that the doctrine *of stare*

*decisis* is of fundamental importance to the rule of law. Adherence to precedent

promotes stability, predictability, and respect for judicial authority."); *Patterson v.*

*McLean Credit Union*, 491 U.S. 164, 172 (1989) ("*Stare decisis* is a basic self-

governing principle within the Judicial Branch, which is entrusted with the

sensitive and difficult task of fashioning and preserving a jurisprudential system

that is not based upon 'an arbitrary discretion'") (quoting The Federalist No. 78, p.

490 (H. Lodge ed.1888)(A. Hamilton).

Northern Pipeline decision has been evaluated in subsequent cases like

*Schor*, *Thomas*, *Granfinanciera* and *Stern*; however, it has not lost its holding or its

principle wanting – rather its traction has been honored. *Northern Pipeline* has not

become indefensible as a legal matter, for it entailed constitutional interpretation and implicated its structure.

**Non-constitutional, functional reasons cannot override constitutional mandate.**

Efficiency and expeditiousness cannot become a reason to overlook the separation of power requirements. See *Granfinanciera* citing *Bowsher v. Synar,* 478 U.S. 714, 736 (1986) (" '[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution'"). Once it is established that it is an essential judicial function, then the Constitution forbids it being placed out of the Article III judicial domain. Thus, "where the Constitution by explicit text commits the power at issue  to the exclusive control" of a given branch; in such a circumstances the Court has "refused to tolerate any intrusion" by the other branches. *Public Citizen v. United States Department of Justice*, 491U.S. 440, 484, 485, 487 (1989); *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211 , 239-40 (1995) (holding legislative reopening, or other invalidation, of final judicial judicial judgment to be categorically un constitutional); *see also, Bowsher*, 478 U.S. at 736 (declining to subject principle of separation of powers to a balancing test); *INS v. Chadha*, 462 U.S. 919, 944-46 (1983).

**Article III judicial power transfer under section 157could not be justified under either under consent or balancing test.**

Mahia did not consent to the jurisdiction of the bankruptcy court, rather opposed it in pleadings, in the bankruptcy court and to the district court. In absence of a consent, the district court cannot force Mahia to a non-Article III bankruptcy court, thus bankruptcy court jurisdiction is void. *See Pretez v. United States*, 501 U.S. 923 (1991) (consent rendering the assignment of jury selection to a magistrate constitutional, also finding right to an Article III judge waiveable). The *Pretez* court also did not find any structural protection issues implicated in such a waiver, for it found that magistrates are appointed and subject to removal by Article III judges and also "the entire process takes place under the district court's total control and jurisdiction," *Id.* Bankruptcy judges do not operate within the "total control and jurisdiction" of the district court. *Id.* The bankrutpcy court is a court within an Article III court, thus violating separation of power, as it chips judicial power from Article III institution.

Mahia's adversary proceeding adjudication by a bankruptcy judge, even if the judge does not have final authority to enter a decision and would be confined to finding of facts and conclusion of law, cannot be justified, on any past approach: the balancing test, Article III jurisdiction or structural implications. Considering the Supreme Court's *Schor* balancing analysis, the question is premised on waiver

of any personal rights to an Article III court. Mahia demanded his constitutional right to an Article III court.

Further, weighing the balancing test does not comport with the constitutionally-mandated separation of powers adopted in *Chadha*, 462 U.S. at 924 (holding legislative veto provisions constitutionally invalid), and *Bowsher v. Synar*, 478 U.S. 714 (1986) (invalidating a statute designed to trigger federal budget cuts on the ground that it vested executive functions in an employee potentially subject to congressional influence). Using a balancing approach here to justify the transfer of judicial business under section 157 of Title 28 undermines the role of the Article III judiciary because it deprives the courts of their fundamental role in the constitutional scheme.

**Congress, with section 157, did not establish procedure for Article III court, rather it withdrew jurisdiction from them.**

Congress with BAFJA rerouted pre-*Marathon* old Bankruptcy Act jurisprudence, particularly, Section 1471(c) powers, through a new devise labeled as "procedures" under 28 U.S.C. 157, re-granting unconstitutional power to the bankruptcy judges.

It is clear that Congress, consistent with the constitutional limitations, has the authority to fix the rules of procedures, including rules of evidence, which Article III must apply. See *Hanna v. Plumer,* 380 U.S. 460, 471-472 (1965) ("The constitutional provision for a federal court system (augmented by the Necessary

23

and Proper Clause) carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either."). Also, Congress could define, by statute, the substantive law which such courts should enforce. The Bankruptcy Clause of Article I § 8 which authorizes Congress to establish "uniform laws on the subject of Bankruptcies throughout the United States" has been broadly construed.

Clearly, Congress has authority to alter the jurisdiction of the lower federal courts and to prescribe procedural rules governing those tribunals. *See, e.g.*, *Melkonyan v. Sullivan*, 501 U.S. 89, 94-96 (1991) (holding that a "final judgment" for purposes of 28 U.S.C. § 2412(d)(1)(B), which permits an award of fees and expenses to a party prevailing against the United States in any civil action upon application within 30 days of "final judgment" means a judgment rendered by a court that terminates the civil action for which fees may be received); *Fed. Sav. and Loan Ins. Corp. v. Ticktin*, 490 U.S. 82, 85-88 (1989)(interpreting provisions governing federal-court jurisdiction over suits commenced by the Federal Savings and Loan Insurance Corporation).

However with section 157's "Procedure," Congress, rather than controlling or regulating, is withdrawing the jurisdiction of Article III court, for juridical

24

business is being transferred to non-Article III courts, not to individuals under the

direct control and supervision of Article III judges. Such "procedure," where

Mahia finds himself, as a defendant in a lawsuit, not before an Article III judge but

a bankruptcy judge and where he has to establish a cause [withdrawal of reference]

to be heard by an Article III judge and has to pay a penalty for the value to be

heard before an Article III court, indeed violates due process.

**District Court is the only adjudicating Court and not the Bankruptcy court. Private Rights requires Article III adjudication.**

The district court cannot force adjudication of Mahia's private rights/claims

before a non-article III court. The underlying controversy deals with "private" right

as fraudulent conveyance actions are deemed private rather than public right.

*Granfinanciera*, 492 U.S. at 56. ("There can be little doubt that fraudulent

conveyance actions by bankruptcy trustees-suits which, we said in *Schoenthal v.*

*Irving Trust Co.,* 287 U.S., at 94-95, 53 S.Ct., at 51 (citation omitted), 'constitute

no part of the proceedings in bankruptcy but concern controversies arising out of

it'-are quintessentially suits at common law that more nearly resemble state-law

contract claims brought by a bankrupt corporation to augment the bankruptcy

estate than they do creditors' hierarchically ordered claims to a pro rata share of the

bankruptcy res.").

Since Mahia is confronting a private right issue, "then it must be **adjudicated** by an Article III court." *Granfinanciera*, 492 U.S. at 55. "For if a statutory cause of action, such as respondent's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2), is not a 'public right' for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial power." *Crowell*, 285 U.S. at 51.

**National laws requires Article III adjudication.**

Mahia has demanded an adjudication by an Article III judge.  A bankruptcy judge is not one. Beginning with appointment, confirmation, tenure and salary guarantees, and impeachment, all Article III related values are meant to ensure impartiality and all these are missing in context of a bankruptcy judge. By virtue of their tenure and salary guarantees, Article III judges are constitutionally assured the structural independence to interpret and pronounce the law impartially. No such constitutional guarantee applies for bankruptcy judges.  As Hamilton observed, the tenure and salary protections are also designed to benefit individual litigants. See THE FEDERALIST No. 78 (Alexander Hamilton) (judicial independence important to protect private rights from unjust laws).

Article III establishes that that the judicial power of the United States must be vested in the federal judiciary as a whole. In *Palmore v. United States* the

Supreme Court stated that "the requirements of Article III . . . are applicable where laws of national applicability and affairs of national concern are at stake. 411 U.S. 389, 407-08 (1973). Title 11 is not matter of or for local legislation. Its reach is national [now expanded to cover international transaction. 11 U.S.C. § 1501 et. seq]. It preempts state laws. *See Stellagen v. Clum*, 245 U.S. 605, 615 (1918) (suspending state laws which conflict with the bankruptcy laws of the Congress).

**Bankruptcy Judge usurps Article III powers.**

Blanket referrals of all cases to the bankruptcy judges under section 157 (a), and vesting them power to decide whether an issue is a core or noncore proceeding under 157 (b)(3), is fatal to the our present bankruptcy system. It is fatal, for it is this power exercised by the bankruptcy judge which shall define his or her jurisdiction. A bankruptcy judge's power to "hear and determine," all cases under Title 11 and all core proceeding arising under Title 11 or related to thereto, is expressly granted. 28 USC 157 (b)(1). There are no checks to the powers exercised by the bankruptcy judge other than by way of an appeal. District courts do not have supervisory role in context of a bankruptcy judge deciding if the issue is core or noncore, but only appellate role under section 158 of Title 28. A bankruptcy judge's decision regarding his or her own jurisdiction, by virtue of discretionary characterizing of a claim as core and adjudicating it, is judicial power at its nadir. Fraudulent conveyances fall within the core category even though they

27

are private right matters and not public. However, Congress could not have assigned them to the bankruptcy judge. As declared by the Supreme Court in *Murray's Lessee v. Hoboken Land & Improvement*: "there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." 59 U.S. 272, 284 (1855). But, the Court added, "we do not consider congress can either withdrew from Judicial congnizance any matter which, from its nature, is the subject of a suit at common law, or in equity, or admirality; nor on the other hand, can it bring under the judicial power as a matter, which, from its nature, is not a subject for judicial determination." *Id.*

Bankruptcy judge is not an adjunct here when he decides his own business, nor is this a supervised role, as this judge is exercising discretionary powers.

**Separation of Power entailed.**

Rule based grant of jurisdiction by the Article III judiciary to bankruptcy judges violates separation of power as did the Congressional grant of power to bankruptcy court to decide private rights issues under 1978 Act. Bankruptcy rule 157, misleadingly labeled as "procedures" is a creation of jurisdiction by the judiciary which in essence is a function reserved for the Congress. However, just

28

because Congress has already permitted such allowance, it does not prevent issues of separation of powers.

**BAFJA**

Subsection (a) of § 157 authorizes the reference of "any or all" bankruptcy cases and proceeding from the district court to the bankruptcy judges. Though this reference is perceived as permissive ("may"), it is in reality a binding instruction, as any litigant, be it a debtor or a third party summoned in a bankruptcy proceeding finds himself, first not in a district court, but in a bankruptcy court. Further, there is no escape out of this predicament, for escape route found in withdrawal of reference burdens the non-consenting party to show a "cause,"—non-debtors seldom establish that cause. Thus the default rule is that all bankruptcy cases and proceedings are filed and heard in the bankruptcy court, in substance, it is still hooked on to the letters of old and unconstitutional section 1471(c). The Court in *Stern v. Marshall* rightly observed:

> The new bankruptcy courts, like the old, do not "ma[k]e only specialized, narrowly confined factual determinations regarding a particularized area of law" or engage in "statutorily channeled factfinding functions." *Northern Pipeline*, 458 U. S., at 85 (plurality opinion). Instead, bankruptcy courts under the 1984 Act resolve "[a]ll matters of fact and law in whatever domains of the law to which" the parties' counterclaims might lead. Id., at 91 (Rehnquist, J., concurring in judgment).

131 S. Ct. at 2599.

In order to salvage this from a Constitutional attack, Congress further divided the bankruptcy proceedings into core and non-core proceedings, [though "purely taxonomic" for Article III jurisdictional purposes] with the district court having authority to enter final decision. However where parties consent, thus granting subject matter jurisdiction [though unconstitutionally], the bankruptcy judges can enter final decision in a non-core proceeding. In core proceeding, the bankruptcy judges by themselves conclude a proceeding to finality.

Mahia, is a non-debtor, who is not seeking relief from the bankruptcy court, not consenting to the bankruptcy court's jurisdiction, or defending causes of action premised in non-bankruptcy New York state fraudulent conveyance law. Ironically, Mahia finds himself before a bankruptcy judge in a proceeding labeled as a "core proceeding."[1]  Despite the label, fraudulent conveyance actions retain their essential character as "suits at common law," thus based on reasoning provided in *Northern Pipeline*, the untenured bankruptcy judge cannot adjudicate this adversary proceeding.

This jurisdiction allocation, emanating from the interrex Emergency Rule, codified by BAFJA, of bankruptcy related proceedings between the bankruptcy

---

[1] The "core proceedings" phrase borrowed from Justice Brennan pluarality opinion in Northern Pipeline Case. Justice Brennan lamented about inclusion of fraudulent conveyances in core proceeding and was concerned that Congress might not have "considered the constitutional implications of its designation of all fraudulent conveyance actions as core proceedings."
*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 88 (1989).

judges and district court violates separation of powers. It is clear that emergency is not a ticket to cut corners or compromise constitutional concerns. "Pragmatism" and "practicality" cannot override constitutional mandate. As Justice Jackson put it, "the unarticulated assumptions" of such pleas for "power to deal with a crisis or an emergency according to the necessities of the case" is that "necessity knows law." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 646 (1952) (Jackson, J. concurring). No doubt that even "necessity" must bow to the law when the Constitution's structural principles are at stake, because "the Framers ranked other values higher than efficiency." *INS v. Chadha*, 462 U.S. at 919, 959 (1983).

Congress is clearly barred from assigning private rights issues to non-Article III tribunals. If that is a mandate against the Congress it equally applies against the judiciary, the district court. The Supreme Court has repeatedly affirmed its decision from *Northern Pipeline* by holding that the Bankruptcy Act of 1978, as invalid and a violation of separation of powers. *See Granfinanciera*, 492 U.S. at 33. It also found that the separation of power ultimately deals with protection of individual rights. If an act of the Congress is deemed to violate the separation of powers and thus threatens individual liberty, then that act is equally unacceptable if performed by the district court's un-individuated blanket referral and shifting the burden to the non-debtor litigant to establish a "cause" to be heard by an Article III judge.

31

The Constitution provides that Congress is given "all legislative powers herein granted," [Art. I, § 1], that "the Executive Power" is vested in the President [Art. II, § 1] and that "the Judicial Power of the United States" is vested in the Supreme Court and lowers courts created by Congress [Art. III, §1].    However there are no rigid walls between these three branches. The Court has taken a "pragmatic, flexible view of differentiated governmental power"—one that seeks "not [to implement] . . . a hermetic division between the Branches" but rather to avoid "'encroachment or aggrandizement [by] one branch against the others.'" *Mistretta v. United States*, 488 U.S. 361, 381 (1989) (quoting *Buckley v. Valeo*, 424 U.S. 1, 122 (1976). Encroachment or aggrandizement, unknowingly or delegably is subject to a constitutional challenge. For instance, "[Congress] may not 'invest itself or its Members with either executive power or judicial power." *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noices, Inc.*, 501 U.S. 252, 274 (1991) (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406 (1928))

Further, what law the courts are to follow is a legislative domain. Grant of jurisdiction, for example, is a core and integral legislative function and it cannot be delegated or abandoned.  Granting referral to the bankruptcy court under 157 by the district could not have been based on a discretionary referral for that is deemed to be legislative function. Congress granted this parallel right to district courts to

32

avoid constitutionality issues as declared in *Northern Pipeline*, and for the same it shifted this responsibility to the district courts.

The separation of power doctrine functions not only to protect the judiciary from intrusion by the executive and legislative branches; it also protects the executive and legislative branch from intrusion by the judiciary. The structural protection provided by Article III cannot be overlooked when judicial business is shared with auxiliary judicial officer such as bankruptcy judges, for reference under section 157 does not maintain the same "district court's total control and jurisdiction" as are found in regards to magistrates assistance. *See United States v. Raddatz*, 447 U.S. 667 (1980).

## VIOLATION OF APPOINTMENT CLAUSE

The District Court below improperly denied the request for withdrawal of reference and thus compelled the non-debtor under the jurisdiction of a bankruptcy judge whose appointment is disputed to be in violation of the Appointment Clause. Mahia raised this point to the district court, however his concerns were not addressed.

A bankruptcy judge, taking into the consideration the immense federal powers exercised on a continuing basis and not personal, "transient," or "incidental." makes him or her an "Officer of the Untied States," and then must satisfies the standard laid out by the Supreme Court:

We think that the term "Officers of the United States" as used in Art. II, defined to include "all persons who can be said to hold an office under the government," is a term intended to have substantive meaning. We think its fair import is that any appointee exercising significant authority pursuant to the laws of the United States is an "Officer of the United States," and must, therefore, be appointed in the manner prescribed by § 2, cl. 2, of that Article.

*Buckley*, 424 U.S. at 125.

The powers of the bankruptcy judge as delineated in Title 11 and Title 28 binds third parties for the benefit of the public, as administering, executing, or authoritatively interpreting the laws. For instance, under 28 U.S.C. § 151, in each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, **as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court**, except as otherwise provided by law or by rule or order of the district court. Also, 28 U.S.C. §157 confers power on Bankruptcy judges to hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11, referred under subsection (a) of this section, and authority to enter appropriate orders and judgments, conduct jury trial.

Thus a bankruptcy court/judge is a federal office involving a position to which is delegated by legal authority a portion of the sovereign powers of the federal Government. Such authority primarily involves the authority to administer, execute, or interpret the law. *See also Printz v. United States*, 521 U.S. 898, 922-23 (1997)(Constitution provides that President and the officers he appoints are the ones who are "to administer the laws enacted by Congress" and "execute its laws"); *Bowsher v. Synar*, 478 U.S. 714, 733 (1986) ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.");

The Appointment Clause specifies that the proper way to appoint "Officers of the United States," whenever Congress significantly changes the nature of an officer's duties and creates a new office, reappointment in accordance with the Constitutions is requisited.  Congress cannot take short cuts regarding appointment of "Officers of United States," for the Appointment Clause embodies a concern for political accountability in the exercise of executive power.  Thus the Court held in *Buckley v. Valeo*, "Congress could not, merely because it concluded that such a measure was 'necessary and proper' to the discharge of its substantive legislative authority . . . vest in itself, or its officers, the authority to appoint officers of the United States" any more than it could "pass a bill of attainder or ex post facto law contrary to the prohibition contained in § 9 of Art. I." 424 U.S. 1, 135 (1976)

35

"We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." *Ryder v. United States*, 515 U.S. 177 (1995). Such concerns were raised, however neither the bankruptcy court or the district court addressed this situation.

Appointment Clause importance cannot be underestimated: "In *Buckley v. Valeo*, the Supreme Court said "[t]he Appointments Clause could, of course, be read as merely dealing with etiquette or protocol in describing 'Officers of the United States' but the drafters had a less frivolous purpose in mind." The Clause is a bulwark against one branch aggrandizing its power at the expense of another branch, but it is more: it "preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power." *Freytag v. Commn'r*, 501 U.S. 868, 878 (1991).

A bankruptcy judge is not a "Principle Officer" as contemplated under Article II of the Constitution, as her appointment is not by the President of the United States with the advice and consent of the Senate. As a result a bankruptcy

judge is an "Inferior Officer." However, assumed jurisdiction by the bankruptcy judge on the underlying Adversary Complaint to decide cases of state common law causes of action would catapult the functioning and power of such judicial officer from an inferior to a principal officer. But a principal officer must be appointed by the President with the Senate consent. Based on the case law and guidance provided, a bankruptcy judge might not be an inferior officer based on the four factors laid out by the Supreme Court: (1) the officer's removability by a superior executive branch official; (2) the scope of the officer's duties; (3) the scope of the officer's jurisdiction; and (4) the tenure of the office at issue. *Morrison v. Olson*, 487 U.S. 654, 665–68 (1988).

First, the bankruptcy judge is not removable at will but only for a cause. 28 U.S.C. §152. Second, the bankruptcy judge, instead of being provided with "only certain, limited duties," has a huge panoply of powers and duties. See 28 U.S.C.§ § 157 and 1334. Third, the tenure of bankruptcy judge is minimum for 14 years and is not ad hoc or temporary in nature. 28 U.S.C. §152. Fourth, the bankruptcy judge has ongoing responsibilities. Thus the bankruptcy judge wields complete powers of an independent judges as found under 28 U.S. C. § 1334 after the matter has been referred under section 157 of title 28—such referral is pre-established— there is no discretionary or individuated consideration given before such reference. The tenure of the bankruptcy judge is not on an ad-hoc basis but spans over a

period of 14 years with re-appointment which is rarely denied. According to

*Morrison* test, the bankruptcy judges cannot be equated to "Inferior Officer."

Further, applying the subsequent test as proposed by Justice Scalia in Edmond

rejecting *Morrison*: "Morrison did not purport to set forth a definitive test for

whether an office is 'inferior' under the Appointments Clause,"—""inferior

officers" are officers whose work is directed and supervised at some level by

others who were appointed by Presidential nomination with the advice and consent

of the Senate,"—the bankruptcy judge role transgress judicial limits of an inferior

officer. *Edmond v. United States*, 520 U.S. 651, 663 (1997).  Applying *Edmond*

test i.e. equating the bankruptcy judge as an adjunct, akin to magistrate to Article

III has been dismissed. *See Stern v. Marshall*, 131 S. Ct. 2594.

The requirements of the Appointments Clause are "among the significant

structural safeguards of the constitutional scheme" and are "designed to preserve

political accountability relative to important government assignments." *Edmond,*

520 U.S. at 659, 663.

Thus, Mahia is being improperly forced to have his issue decided by an

unconstitutionally improper forum despite the fact that Mahia has an independent

*right* to adjudication in a constitutionally *proper* forum, *Glidden,* 370 U.S. at 533,

671.  Withdrawal of reference should have been granted, as this power codified

under 28 U.S.C. § 157 is a part of the effort to remedy constitutional difficulty of having a bankruptcy judge excise judicial power. 28 U.S.C. § 152.

## JURY TRIAL WAS NOT LOST

The district court erred in striking the jury demand without withdrawing the reference. For a denial of motion to withdraw the reference is not suppose to be a ruling on merits. However where merits are considered and it impacts the substantive rights of the claimant, the court should have withdrawn the reference and then ruled on it, as the district court is an appellate court for bankruptcy purposes

The District Court improperly denied Mahia a jury trial. The district court misconstrued and misapplied the law regarding jury demand. The jury demand was properly raised in the both answers as filed to the old and new complaint. Demand for jury should not have been dismissed as a trifle. The Seventh Amendment is a vital limitation on federal judicial and the Supreme Court has warned that "[m]aintenance of the jury as a factfinding body if of such importance and occupies so firm a place in our history and jurisprudence and any seeming curtailment of the right to a jury trial should be scrutinized with utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935). "The right to trial by jury has long been an important protection in the civil law of this country. According to the Founding Fathers, the right served as "an important bulwark against tyranny and

39

corruption." *See Pereira v. Farace*, 413 F.3d 330, 337 (2d Cir. 2005) *citing Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 343, (1979) (Rehnquist, J., dissenting).

District court makes an improper postulation of law when it states that, "[a] demand for a jury trial would have been timely had it been made prior to the date the answer was due, January 4, 2012." The judge misreads Rule 38.   It is clear that the jury demand must be made not later than 14 days after service of the last pleading directed to the issue as to which jury trial is demanded and until the pleading is served, the 14 days does not begin to run. *McCarthy v. Bronson*, 906 F.2d 835, 840 (2d Cir. 1990), cert. granted in part, 498 U.S. 1011, aff'd, 500 U.S. 136 (1991) (no answer filed to original or first amended complaint; demand made after service of second amended complaint, but before service of answer to second amended complaint was).

Also although an answer may be served months after service of a complaint, there is no waiver of the right to jury trial if the demand is made within 14 days of service of the answer. *In re Texas Gen. Petroleum Corp.,* 52 F.3d 1330, 1339 (5th Cir. 1995) (answer filed almost seven months after service of original complaint and after filing of amended complaint; no waiver when jury demand filed with answer).

The Answer with the pleadings was served, though no affidavit of service was filed. Further, the right to jury was recognized both by the Plaintiff and as well as the bankruptcy judge. "The service of a jury demand on the other parties in a case is central to the operation of Rule 38" and the same was undertaken. *Rosen v. Dick*, 639 F.2d 82, 89 (2d Cir. 1980). Parties have also been deemed to acquiesced in to the demand for jury trial. Kramer twice requested adjournment to address the counterclaims and entered into a stipulation for the same which clearly reflecting acknowledge of jury demand. It was also "So Ordered." A33-A36.

Although, the counterclaims were withdrawn, the right to jury still remains on all other issues. Kramer amended the underlying adversary complaint and Mahia again filed and sought jury trial and service of the same was also filed. A53.

Once again the District Court unfairly erred in concluding that there was significant delay in the proceedings. It was Kramer, and not Mahia, that always sought extension on the underlying adversary complaint. A33-A36.

Kramer did not diligently prosecute the adversary complaint. Kramer put the prosecution of this adversary on halt, for she wanted to use the sanction motions against Mahia's counsel in order to coerce Mahia into settlement.

## CONCLUSION

For the reasons stated above, Mahia respectfully request this Honorable Court to reverse the judgment of the district court and remand the case for revocation of reference and reinstatement of jury right.

Respectfully submitted,

Karamvir Dahiya, for the Defendant-Appellant
75 Maiden Lane Suite 506
New York, New York 10038
Tel:(212)766-8000
Email: Karam@legalpundit.com

## CERTIFICATE OF COMPLIANCE

I, the undersigned counsel for the, Defendant-Appellant, certify that this brief contains 14,000 words or less.

_____

Karamvir Dahiya, for the Defendant-Appellant